# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR25-4068-LTS-KEM |
| Plaintiff, | |
| vs. | **MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |
| ROCKY HERNANDEZ, | |
| Defendant. | |

## *I.     INTRODUCTION*

This matter is before me on a Report and Recommendation (R&R) (Doc. 46) in which Chief United States Magistrate Judge Kelly K.E. Mahoney recommends that I grant in part and deny in part defendant Rocky Hernandez's motion (Doc. 24) to suppress evidence. Hernandez objects (Doc. 47) to the portions of Judge Mahoney's R&R in which she recommends denying his motion to suppress. The Government has filed a resistance (Doc. 48) to Hernandez's objections.

## *II.     BACKGROUND*

Hernandez is charged in a one-count indictment of knowingly possessing multiple firearms as a felon. Doc. 5 (citing 18 U.S.C. §§ 922(g)(1), 924(a)(8)). He seeks to suppress evidence gathered at two distinct times: (1) a state-issued warrant search of Hernandez's trailer home and vehicles in November 2024 and (2) a pat-down search in October 2025. Only the 2024 warrant search remains at issue.[1]

---

[1] Judge Mahoney recommends suppressing evidence obtained from Hernandez's person during the October 2025 pat-down search. Doc. 46 at 18. The Government does not object to that

Judge Mahoney held an evidentiary hearing on May 27, 2026. Doc. 38. The Government called three witnesses: Lieutenant Daniel Plueger, Sheriff Jeff TeBrink and Officer Brianna Malone. In addition, the court received the following exhibits into evidence:

- Ex. A (Doc. 25-1) – Search warrant materials
- Ex. B (Doc. 25-2) – Search warrant inventory
- Ex. C (Doc. 25-3) – Plueger's incident report
- Ex. D. (Doc. 25-4) – Malone's report
- Ex. E. (Doc. 24-2) – Google Street View image of where the 2025 pat-down occurred
- Ex. 1 & 2 (Docs. 30-1, 30-2) – Malone's body camera recordings
- Ex. 3 (Doc. 37-1) – Plueger's body camera recording
- Ex. 4 (Doc. 37-2) – Eviction order

Judge Mahoney's factual findings are set forth in the R&R (Doc. 46). Those findings are not objected to and are therefore adopted without modification.

### III.    STANDARD OF REVIEW

A district judge reviews a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

---

recommendation. Doc. 48 at 1. In objecting to the R&R, Hernandez further requests the suppression of statements he made after the unlawful pat-down search. Doc. 47 at 1. The Government agrees that this is appropriate. Doc. 48 at 1.

2

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### IV.    DISCUSSION

The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. This means that all governmental searches must be reasonable. *Kentucky v. King*, 563 U.S. 452, 459 (2011). With certain exceptions, warrantless searches are presumptively unreasonable. *United States v. Castaneda*, 438 F.3d 891,

3

893 (8th Cir. 2006) (citing *Horton v. California*, 496 U.S. 128, 133 (1990); *United States v. Ross*, 456 U.S. 798, 824–25 (1982)); *see also Illinois v. Gates*, 462 U.S. 213, 236 (1983) (recognizing a "strong preference for searches conducted pursuant to a warrant"). A warrant must be supported by probable cause, which exists if "under the totality of the circumstances, a showing of facts can be made 'sufficient to create a fair probability that evidence of a crime will be found in the place to be searched.'" *United States v. Tate*, 139 F.4th 678, 682 (8th Cir. 2025) (quoting *United States v. Johnson*, 848 F.3d 872, 876 (8th Cir. 2017)).

A court reviewing the probable cause basis for a search warrant must accord deference to the issuing judge's findings. *United States v. Maccani*, 49 F.4th 1126, 1130 (8th Cir. 2022). If the issuing judge "had a 'substantial basis for concluding that probable cause existed,'" then the search warrant will pass reviewing scrutiny. *Juneau*, 73 F.4th 607, 614 (8th Cir. 2023) (quoting *Johnson*, 848 F.3d at 876). Still, when the issuing judge based the probable cause finding wholly on a supporting affidavit, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Roberts*, 975 F.3d 709, 713 (8th Cir. 2020).

In addition, probable cause to search must "exist at the time at which the warrant is issued, not at some earlier time." *United States v. Steeves*, 525 F.2d 33, 37 (8th Cir. 1975). This means evidence that could have provided probable cause for a search warrant can become stale. *United States v. Lemon*, 590 F.3d 612, 614 (8th Cir. 2010). "Factors relevant to whether information is sufficiently current to establish probable cause include the nature of the criminal activity, the lapse of time, and the property that would be subject to search." *United States v. Espinoza*, 9 F.4th 633, 635 (8th Cir. 2021). Thus, "a highly incriminating or consumable item of personal property is less likely to remain in one place" and evidence of such contraband might grow stale quickly. *Steeves*, 525 F.2d at 38. By contrast, "[i]nformation that someone is suspected of possessing firearms illegally is not stale, even several months later, because individuals who possess firearms

4

tend to keep them for long periods of time." *United States v. Neal*, 528 F.3d 1069, 1074 (8th Cir. 2008).

Even when a reviewing court finds that a search warrant was defective, it does not automatically follow that the evidence obtained through that warrant must be suppressed. *United States v. Leon*, 468 U.S. 897, 916 (1984) (recognizing a good faith exception). In discussing the good faith exception, the Eighth Circuit Court of Appeal has explained:

> While the ordinary sanction for police violation of Fourth Amendment limitations has long been suppression of the evidentiary fruits of the transgression the exclusionary rule does not apply when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. This good faith exception does not apply when an officer executes a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*. This is an objective inquiry—whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization. "Entirely unreasonable" is not a phrase often used by the Supreme Court and is a particularly strong choice of words. The exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates.

*United States v. Diaz*, 154 F.4th 621, 628–29 (8th Cir. 2025) (cleaned up). In addition, the good faith exception does not apply when "the issuing magistrate wholly abandoned his judicial role" or when an affidavit included misleading information that the affiant "knew was false or would have known was false except for his reckless disregard for the truth." *Leon*, 468 U.S. at 923. "[W]hen assessing the officer's good faith reliance on a search warrant . . . [a court] can look outside of the four corners of the affidavit and consider the totality of the circumstances, including what the officer knew but did not include in the affidavit." *United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014).

In this case, Plueger signed an affidavit to obtain the 2024 search warrant, recounting that (1) he confirmed Hernandez's felon status through a criminal history

5

search and after conferring with the Plymouth County Attorney's Office, (2) more than six months earlier, Hernandez had pawned an AR-15 rifle to his landlord for $300 because Hernandez was "low on monetary funds," (3) Hernandez had not paid to have his rifle returned and (4) the landlord had observed Hernandez with a handgun. Doc. 25-1 at 12. Plueger also provided photos confirming the transaction between Hernandez and the landlord. *Id.* at 8–11. Not included in the affidavit, but known to Plueger at the time, was that Hernandez had suggested to his landlord that he possessed the handgun in case "anybody breaks into his residence." Doc. 25-3 at 1. Plueger testified at the suppression hearing that when he interviewed the landlord, the landlord "didn't know exactly when" he had observed Hernandez with the handgun, but Plueger assumed that Hernandez continued to possess that firearm. Doc. 43 at 78.

Because both parties focus on the whether the good faith exception applies, and do not address the applicability of other exceptions to the exclusionary rule, I will limit my review accordingly. And because the R&R separates the search of Hernandez's home from the searches of his vehicles, and skips to evaluating the applicability of the good faith exception without addressing whether the warrant was backed by probable cause, I will follow suit.

### A. *Home Search*

Plueger understood Hernandez to have been seen at an unspecified time with a handgun that Hernandez kept for home defense, establishing a nexus to his home. There are problems establishing a timeframe for its possession, but evidence of firearm possession does not become stale for a significant period. *See Neal*, 528 F.3d at 1074. Independently, the landlord's observation of Hernandez with a handgun supports probable cause to search the defendant's residence "because people generally keep firearms at home or on their persons." *United States v. Cowling*, 648 F.3d 690, 696 (8th Cir. 2011) (cleaned up). Although Hernandez had pawned his AR-15 to his landlord, their agreement established a time period for him to repurchase that firearm. Doc. 25-1 at 12.

6

While that time had past, the option to repurchase the AR-15 increased the likelihood that Hernandez had retained ammunition for it. These points were sufficient indicia of probable cause for Judge Mahoney to conclude that the officer's reliance on the search warrant was not entirely unreasonable.

Hernandez accepts the general principle that that evidence of gun possession does not become stale for a significant period of time. However, he correctly notes that staleness is a context-specific inquiry. *See, e.g., United States v. Maxim*, 55 F.3d 394, 397 (8th Cir. 1995). Hernandez claims that the information known to officers at the time of the search warrant application made it unreasonable for officers to assume that Hernandez still had firearms in his house. He contends that the landlord's assertion of having observed Hernandez with a handgun, and having heard Hernandez claim to keep a firearm for home defense, has little probative value when there is no timeline for when either event occurred.[2] Hernandez notes that he had already pawned his AR-15 to his landlord because of his need for money and that when this fact was surfacing, Hernandez was being evicted. He suggests that logic would dictate that he would have resorted to pawning or selling his other firearms (if he had any) before reaching the point of eviction. Also, he asserts that his past possession of the AR-15 had no probative value as to present firearm possession because, by then, the landlord had traded it to a third-party. As to Judge Mahoney's suggestion that Hernandez might have kept AR-15 ammunition after pawning the gun, Hernandez argues that nothing in the affidavit supports such a conclusion.

Hernandez's theory is not the only way a reasonable person might have viewed the circumstances. Plueger understood that Hernandez possessed a handgun for home

---

[2] Although Hernandez challenges the weight that the landlord's statements to officers should have been given—particularly how it lacks a discernible timeline for connecting Hernandez to possessing a firearm—he does not appear to challenge the credibility of landlord's reports to law enforcement. At the least, officers had a sufficient basis to believe the landlord's statements. *See* Doc. 25-1 at 6–7.

7

defense. One could reasonably believe that Hernandez retained possession of the handgun for that purpose while pawning a different gun due to money issues. Moreover, while the indefinite timeline of when the landlord saw Hernandez with a handgun, or heard him state that he kept it for home protection, made it possible the conversation happened "years ago," Doc. 47 at 4, firearm possession evidence is not particularly susceptible to staleness. *See, e.g.*, *Maxim*, 55 F.3d at 397 (three-year-old evidence of gun possession could still support affidavit for search warrant). Under these facts, it was reasonable for officers to believe Hernandez continued to possess the handgun. In addition, I agree with Judge Mahoney that it was reasonable to infer that Hernandez may have kept AR-15 ammunition after having pawned the firearm. Instead of selling it outright, he transferred its possession while retaining an option to recover it at a later date. This made it more likely that he would have retained ammunition for the AR-15.

Judges and officers may make reasonable inferences of what a search will reveal during the search warrant application process. *See United States v. Brackett*, 846 F.3d 987, 992 (8th Cir. 2017) (an issuing judge may "draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant" and law enforcement "may make reasonable inferences in preparing affidavits in support of a warrant"). While Hernandez offers one plausible theory as to how a reasonable officer might have viewed the information in Plueger's affidavit, his theory is not exclusive. The information known to law enforcement was not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.

Finally, Hernandez argues that Plueger's failure to disclose the vagueness problems with the landlord's timeline "invited the issuing judge to assume the observation was recent," a reckless omission that precludes application of the good faith exception. Alternatively, he argues that the issuing judge's failure to inquire further about the timeline indicates that he was a rubber stamp for law enforcement and abandoned his judicial role. *Cf. United States v. Decker*, 956 F.2d 773, 777–78 (8th Cir. 1992). In hindsight, it would have been preferable for Plueger and the issuing judge to clear up the

landlord's timeline, but this omission is not so material as to render the good faith exception inapplicable.

Based on my de novo review, I find that a reasonably well trained officer would not have known that the search of Hernandez's home was illegal despite the issuing judge's authorization. I therefore will adopt Judge Mahoney's recommendation to deny Hernandez's motion to suppress the evidence found inside his home.

### B.     *Vehicles Search*

Plueger's affidavit made no mention of Hernandez's vehicles except to note that they were registered to Hernandez. *See* Doc. 25-1 at 2. It appears that the decision to include the vehicles was based on a recommendation by the Plymouth County Attorney's Office. Doc. 25-3 at 1. However, Plueger had not provided the county attorney's office with any information implicating the vehicles. Doc. 43 at 60. Indeed, he testified to having no knowledge that connected Hernandez's firearm possession to the vehicles. *Id*. at 80.

The only support for the application of the good faith exception to the search of the vehicles is: (1) the vehicles were registered to Hernandez, (2) the county attorney's office recommended that the vehicles be included in the search and (3) the issuing judge signed off on the warrant. There is no evidence in this record that might permit the inference that people regularly keep firearms in their vehicles, as they may in their homes or on their persons. *Cf. Cowling*, 648 F.3d at 696. And while "[s]eeking the advice of an attorney can be factored in to determine if an officer's conduct is objectively reasonable," *United States v. Johnson*, 78 F.3d 1258, 1264 (8th Cir. 1996), "because the [county attorney] [is] part of the prosecution team, their review . . . cannot be regarded

9

as dispositive." *Messerschmidt v. Millender*, 565 U.S. 535, 554 (2012); *accord United States v. Lyles*, 910 F.3d 787, 796–97 (4th Cir. 2018).[3]

Based on my de novo review, I find that a reasonably well trained officer would have known that the search of Hernandez's vehicles was illegal despite the issuing judge's authorization.[4] As such, the good faith exception does not apply and all evidence gathered as a result of the search of the vehicles must be suppressed.

## V.    CONCLUSION

For the reasons set forth herein:

1.    Defendant Rocky Hernandez's objections (Doc. 47) to the Report and Recommendation (Doc. 46) are **sustained in part** and **overruled in part**, as set forth above.

2.    As a result, I hereby **accept** the Report and Recommendation (Doc. 46) in part and **decline to accept** the Report and Recommendation in part.

---

[3] The Eighth Circuit places weight on this factor. *See, e.g.*, *United States v. Terry*, 305 F.3d 818, 823 (8th Cir. 2002) ("In addition, because the Benton County officers executing the search knew that the Benton County prosecutor and the issuing judge found the affidavit sufficient, we find that the Benton County officers' reliance upon the issued search warrant was reasonable."); *United States v. Hallam*, 407 F.3d 942, 947 (8th Cir. 2005) (determining that the officer "acted in good faith in relying on the county prosecutor and state judge's probable cause determination"). These cases are distinguishable because other indicia of probable cause existed to support the warrant. Here, Plueger candidly admitted that no information connected firearms to Hernandez's vehicles, apart from the fact that Hernandez was suspected of possessing firearms and owned the vehicles.

[4] Judge Mahoney cited a case with similar facts in which the court applied the good faith exception. *See United States v. Fletcher*, No. 16-cr-20336, 2016 WL 6277160, at *4 (E.D. Mich. Oct. 27, 2016) (finding no nexus between illegal activity and vehicles to be searched but applying the good faith exception because "the affidavit explains the connection between the Defendant and the vehicles, connects the cars to the house in terms of proximity, and lists the contraband found in the house, including a stolen firearm and various types of ammunition that do not match the stolen firearm as well as various identi[t]y theft evidence"). Even accepting the *Fletcher* court's conclusion, the facts in that case offered more indicia of probable case because a prior search had unearthed contraband in the suspect's residence. The officers in this case had no such information when they relied on the warrant to search the vehicles.

10

3.      Hernandez's motion (Doc. 24) to suppress is **granted** with regard to evidence obtained from the 2024 warrant search of Hernandez's vehicles and the 2025 pat-down search.  The motion is also **granted** with regard to statements elicited from Hernandez during and following the 2025 pat-down search.  All such evidence is hereby **suppressed**.

4.      Hernandez's motion (Doc. 24) to suppress is **denied** with regard to evidence obtained during the 2024 warrant search of Hernandez's home.

**IT IS SO ORDERED** this 3rd day of August, 2026.

_____
Leonard T. Strand
United States District Judge

11